# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS RUSSEL AMES (#B-51770), ) | |
| ) | |
| Plaintiff, ) | Case No. 18 CV 2930 |
| ) | |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| DR. SALEH OBAISI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Ames, an Illinois state prisoner, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Ames claims that a doctor, correctional officials, and grievance officers at the Stateville Correctional Center violated his constitutional rights by acting with deliberate indifference to his serious medical needs and that a correctional officer used excessive force against him by applying (or refusing to remove) overly tight handcuffs. All of the served correctional and administrative Defendants have filed motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cognizable federal claim.[1] For the reasons stated in this order, Defendants' motions are granted. The late Dr. Saleh Obaisi is the sole remaining Defendant in this case.

**Factual Background**

At the time of the events giving rise to this lawsuit, Ames was an Illinois state prisoner, incarcerated at the Stateville Correctional Center. Defendant Saleh Obaisi was a staff physician at Stateville. Defendant Christopher Medin (sued as "Medein") is a Stateville correctional officer, assigned to the prison's tactical team. Defendants Jill Hosselton and Anna McBee are or were prison grievance officers. Defendants Randy Pfister and Tejada were, respectively, Stateville's warden and

---

[1] The U.S. Marshal filed an unexecuted return of service for Defendant Hosselton, who is retired. *See* R. 39, Process Receipt and Return. Irrespective of service, the Court is satisfied that Hosselton is entitled to dismissal for the same reasons as fellow grievance officer Anna McBee.

an acting assistant warden. Defendants Sherry Benton and Sarah Johnson are members of the Illinois Administrative Review Board. Defendant John Baldwin was the Illinois Department of Corrections' ("IDOC") acting director.

Ames alleges that in October 2014, he went to "sick call" for treatment of a severe flare-up of plaque psoriasis. The condition affected portions of Ames's entire body. Because handcuffing hurt Ames's back and shoulder, as well as scraped the skin on his wrists, a prison nurse scheduled him to see the doctor for a medical restraint permit limiting him to front-cuffing only.

After multiple cancelled appointments, Ames saw a physician's assistant, non-defendant Latonya Williams, in December 2014. Williams prescribed certain creams and ointments. Williams also prescribed Ames latex-free gloves to wear as an occlusive bandage at night to cover the hand cream. In addition, Williams referred Ames to Defendant Dr. Obaisi for a permit evaluation. Later that month, Williams advised Ames that he had not received approval for the gloves. Ames protested, showing her how much better his hands looked after two weeks wearing the gloves, but she insisted that the relief was due to the prednisone. Ames returned to Williams in January 2015. He showed her that the inflammation had recurred and informed her that his Lidex solution for skin disorders was not getting refilled. Williams renewed Ames's prescriptions.

Ames finally saw Dr. Obaisi on January 27, 2015. Dr. Obaisi observed Ames's condition, and witnessed the difficulties Ames experienced when his wrists were cuffed behind his back. The correctional officer who accompanied Ames to the appointment confirmed to Dr. Obaisi that it was a struggle to cuff Ames on a daily basis. Dr. Obaisi accordingly issued Ames a one-year front cuff permit, assuring Ames that he would be re-evaluated at the expiration of a year.

In June 2015, Ames saw Dr. Martija, who is not a Defendant. Dr. Martija noted the chronic inflammation of Ames's fingertips, knuckles, palms, and joints. Dr. Martija concluded that Ames was suffering from dermatitis and psoriasis. She scheduled a follow-up appointment, and after examining

2

Ames at that time, Dr. Martija observed that Ames's hands were not responding to the corticosteroids; she also found that his symptoms pointed to several different conditions. She therefore advised Ames that he needed to see an outside specialist for confirmation of the diagnosis and for alternative treatment.

In November 2015, Ames met with Dr. Martija again. Ames claimed that Dr. Martija attempted to write him off by noting in his medical records that his hand lesions were better. Thereafter, Ames showed her how bad his hands were, and she conceded that his condition had not improved. According to Ames, Dr. Martija then confided that Dr. Obaisi had refused to authorize the referral to an outside dermatologist. She further reported that the doctor had indicated to her that nothing more would be done for Ames. Ames pleaded with Dr. Martija for help, so she agreed to resubmit a request for an outside evaluation.

Thereafter, Williams corrected Ames's medical record to read, "[P]ersistent and spreading centrally." She additionally noted that Ames needed medical showers to soften the areas of plaque, and gloves to cover the creams. Also, Williams assessed that Ames's condition was too wide-spread for the long-term use of powerful corticosteroids. Dr. Martija documented that she considered Ames to be an appropriate candidate for infusions of Humira, an immunosuppressive drug used to treat plaque psoriasis, among other conditions.

In January 2016, Ames submitted numerous requests to see Dr. Obaisi to renew his front cuff permit. Receiving no response, Ames filed an emergency grievance; however, Stateville's warden, Defendant Pfister, refused to treat the grievance on an emergency basis. Pfister checked the box instructing Ames to pursue normal grievance procedures.

In March 2016, Ames visited Dr. Obaisi again. Dr. Obaisi reiterated that Ames could not get a referral for a consultation with an outside dermatologist. Also, Dr. Obaisi purportedly stated that "they" would authorize more front cuff permit renewals, but the doctor refused to identify who "they"

3

were. Dr. Obaisi prescribed a less potent corticosteroid. The small tubes of Triamcinolone were not sufficient to cover Ames's affected areas. Afterwards, Ames spoke to correctional officer Defendant Medin, who promised to look into the matter. Medin later confirmed that "someone" had ordered no more front cuff permits. Medin declined to identify who that "someone" was.

Defendant Hosselton, a grievance officer, recommended the denial of Ames's grievance concerning the denial of a medical permit for front-cuffing. Defendant Pfister denied the grievance at the institutional level. The Administrative Review Board denied Ames's ensuing appeal. In denying Ames relief, Defendant Benton reported, "Per Obaisi, not medically warranted to renew."

In May 2016, Dr. Obaisi once again refused to refer Ames to an outside specialist even though his condition had continued to deteriorate. Dr. Obaisi also declined Ames's request for a Humira infusion or some other alternative to the corticosteroids despite the fact that those medications were not working. At a second appointment that month, Dr. Obaisi complained, "Not this guy again," when he saw Ames. He directed a nurse to reschedule Ames, refusing to meet with him that day.

On July 11, 2016, Defendant Tejada, the acting warden, ordered a shakedown of E-House following a disturbance. When it was Ames's turn to be handcuffed, he showed the tactical team his expired permit for front cuffing. He was told that he could not be cuffed in the front without a valid permit. The unnamed officer agreed only to double-cuff Ames pursuant to his request. Ames was then taken to the inmate dining room.

During the shakedown, Medin advised the inmates gathered in the dining room that there would be no front-cuffing and no bathroom breaks during the shakedown. Medin allowed that if any prisoner had a legitimate complaint about his cuffs being too tight, the officers would adjust them. At first, Ames's requests to loosen his cuffs were put off, but then Medin removed them about a half-hour or forty-five minutes later. By then, Ames's shoulder and wrists hurt, and his fingers had become numb and purple. Medin advised Ames to shake his hands to alleviate his discomfort.

4

Medin then re-cuffed Ames. Ames requested that Medin handcuff him with his hands in front, but the officer refused to do so. Because Ames's hands were handcuffed behind his back twice that day, his skin lesions reopened during the shakedown, which lasted about three hours or so in total. Ames's hands became discolored and his wrist bled where a patch of psoriasis-afflicted skin rubbed off.

The next day, Ames saw Dr. Obaisi. Ames showed Dr. Obaisi the bruises and red marks the restraints had left on his wrists. Ames also reported that his fingers were still numb from the shakedown. Nevertheless, Dr. Obaisi refused to renew Ames's permit for front-cuffing. Dr. Obaisi reiterated that "they" did not want the doctor to issue any more front-cuff permits.

Defendant McBee recommended the denial of another grievance in September 2016, after conferring with the prison's medical staff. McBee failed to address Ames's concerns relating to the actions of Medin and the tactical team during the shakedown. Both grievances were denied at all levels of administrative review. An additional grievance concerning Ames's medical care was denied in March 2017.

**Procedural Background**

Upon screening the complaint pursuant to 28 U.S.C. § 1915A, the judge previously assigned to this case recruited *pro bono* counsel to represent Ames. (R. 6, Order of April 30, 2018) (Castillo, J.). The Court dismissed Ames's initiating *pro se* complaint without prejudice to counsel filing an amended complaint "assuming counsel c[ould] do so consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure." *Id.*, p. 6.

The first attorney assigned to the case reported that he was unable to fulfill his assignment; therefore, the Court enlisted another attorney. (R. 14, Order of July 30, 2019) (Castillo, J.). Upon Judge Castillo's retirement, the case was reassigned to this Court. In March 2020, newly appointed *pro bono* counsel filed a motion to withdraw. Counsel informed the Court that based on his investigation and legal research, "this cause lacks merit sufficient to warrant [counsel]'s continued

5

representation of Plaintiff in this matter." (R. 22, Motion for Relief from Appointment, ¶ 13.) Counsel further stated that he could not file an amended complaint in accordance with Fed. R. Civ. P. 11 because, in his professional assessment, Ames's claims were not warranted under existing law and could not be supported by a good faith argument for extension, modification, or reversal of the existing law. (*Id.*, ¶ 11.) As Ames nevertheless chose to move forward with this lawsuit, the original complaint became re-operative.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court construes pro se allegations liberally. *Anderson v. United States*, 981 F.3d 565, 575 (7th Cir. 2020).

**Discussion**

Prison employees must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A Section 1983 medical claim requires the prisoner-plaintiff to allege facts showing that he or she suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Walker v.*

6

*Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quotation omitted).

Defendants do not contest whether Ames had an objectively serious medical condition. Instead, Defendants dispute whether the subjective prong has been met—that is, whether Ames has stated facts supporting an inference that non-medical IDOC employees, such as administrative staff, grievance officials, and correctional officers, acted with deliberate indifference. For liability to attach, a defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer*, 511 U.S. at 837. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

*Warden Pfister and Grievance Officials*

The Court grants the warden's and grievance officials' motion to dismiss based on their lack of personal involvement in the provision of Ames's medical care. Section 1983 is premised on the wrongdoer's personal responsibility; therefore, an individual cannot be held liable unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (citation omitted).

Viewing his pro se allegations liberally, Ames's grievances were insufficient to trigger liability on the part of the non-medical, grievance officials Defendants McBee, Johnson, Pfister, Benton, or Baldwin. "[T]he alleged mishandling of a grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). Specifically, ruling against a prisoner on an administrative complaint or rejecting a prisoner complaint does not cause or contribute to a constitutional violation. *George v.*

7

*Smith,* 507 F.3d 605, 609-10 (7th Cir. 2007). Also, in the usual course, prison administrators may rely on medical staff to provide proper medical treatment. *See Arnett*, 658 F.3d at 755. Nonetheless, non-medical officials can be liable for deliberate indifference if they have actual knowledge that prison medical staff were mistreating a prisoner. *Id.* at 755-56. The operative "question is whether the non-medical defendants had any duty to do more than they did, in light of their knowledge of the situation." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008).

Under the circumstances, the grievance officials' failure to intervene in Ames's medical care is not actionable. To establish deliberate indifference, a plaintiff must show that the defendant "*actually* knew of and disregarded a substantial risk of harm." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (emphasis in original). Ames has failed to sufficiently allege that the grievance officials knew of and disregarded a substantial risk of harm. At its core, this case involves a fairly common auto-immune skin disease and a dispute over the need for a front-cuffing permit. Ames was regularly seeing the prison's medical staff throughout the relevant time period, even though he was dissatisfied with the quality of his medical care. Indeed, he expressly concedes that grievance officials consulted with Stateville's medical staff before ruling on his grievances. In short, Ames is suing non-medical professionals over their refusal to substitute their judgment for a medical doctor's in connection with issues relating to a chronic affliction that was not life-threatening, critical, or acute. On this set of facts, the grievance officials cannot be held accountable for failing to investigate perceived errors or omissions on the part of Dr. Obaisi. The Court therefore grants the motion to dismiss as to Defendants McBee, Johnson, Pfister, Benton, and Baldwin in their capacity as grievance officials. The Court on its motion dismisses the complaint as to non-served Defendant Hosselton, another grievance official, for the same reasons.

*Correctional Officer Medin*

For similar reasons, the motion to dismiss is granted as to Defendant Medin. The complaint

8

details two incidents involving Medin: (1) Medin agreed to see why the health care staff was refusing to issue Ames a front-cuff permit, and then reported back to Ames that an unidentified "someone" had ordered that Stateville authorize no more such permits; and (2) during a July 2016 shakedown, Defendant Medin (a) advised the inmates gathered in the dining room that there would be no front-cuffing; (b) gave allowances only for prisoners to have their handcuffs loosened if too tight; and (c) after taking his time in granting Ames's request to have his handcuffs adjusted, encouraged him to shake out his hands to alleviate any discomfort, but then re-cuffed him with his hands behind his back.

With respect to the first encounter, just as grievance officials were constitutionally permitted to respect a trained physician's decision not to issue a front-cuff permit, Medin had no affirmative obligation to question Dr. Obaisi's medical judgment or to challenge his medical decision. Also, Medin committed no wrongdoing in contacting the health care department on Ames's behalf.

With respect to the prison shakedown, Ames had no constitutional right to have Medin honor his expired front-cuff permit. The Eighth Amendment imposes liability on prison officials who "intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health." *Gonzalez v. Feinerman,* 663 F.3d 311, 313-14 (7th Cir. 2011). Accordingly, Ames was required to allege facts plausibly showing that Medin was aware of the serious medical need, but was deliberately indifferent to it. *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012). Ames has not met that threshold burden.

Ames cites *Stewart v. Rhodes*, 473 F. Supp. 1185 (S.D. Ohio 1979), *aff'd,* 785 F.2d 310 (6th Cir. 1986), for the proposition that "inmates should rarely if ever be kept in restrictive restraints for more than a few hours." Ames, however, was not held in restrictive restraints for more than a few hours. Also, the plaintiffs in *Stewart*, a non-binding Ohio district court case, challenged the use of so-called "four-way restraints," in which prisoners were chained on their back to a metal bed frame by means of handcuffs and leg irons, often with a "belly chain" to secure their waist to the frame, and then held

9

spread-eagled or on their side for days at a time. 473 F. Supp. at 1190. In granting the plaintiffs' motion for a preliminary injunction, the Ohio court found that prison officials were often using four-point restraints "as a punitive, not a control measure" against inmates for being unruly. *Id.* at 1192. As such, the *Stewart* decision has no bearing on the case before the Court, which involves the routine and relatively short-term use of restraints on the entire inmate population for security purposes during a unit-wide shakedown.

As with grievance officials, Ames was asking Medin, in effect, to permit front-cuffing when the doctor did not do so. Presumably, the very purpose of medical permits is to ensure that prison medical doctors—and not correctional officials who lack specialized medical knowledge—make such calls. Meanwhile, Ames admits that when he complained that his cuffs were too tight, Medin removed his shackles (though not as quickly as Ames would have liked) and permitted him to shake out his hands for a while before being re-cuffed. Medin's response to Ames's distress does not support an inference of deliberate indifference. Ames's dispute is with Dr. Obaisi for failing to prescribe a medical permit and not with correctional employees who depend on the medical staff to make such assessments. Medin is dismissed as a Defendant in this action.

*Assistant Warden Tejada*

Defendant Tejada's motion to dismiss is also granted. According to the complaint, Tejada ordered the E-House shakedown in question following "a scuffle that happened" there between a mentally ill inmate and a correctional officer known for experiencing significant conflict with the prisoner population. Ames acknowledges that the shakedown was in direct response to the incident, but he nonetheless contends that the search was "not penologically justified" because the physical altercation was supposedly an isolated incident that did not result in serious injury to either party. The Court, however, need not decide whether the situation warranted a major shakedown. The sole issue is whether Tejada acted with deliberate indifference to Ames's serious medical needs, not

10

whether the shakedown was justified. The Court concludes that the facts alleged do not plausibly state a deliberate indifference claim as to Tejada.

Ames does not reasonably argue either that Tejada personally engaged in excessive force, or that his ordering a shakedown constituted an act of deliberate indifference to Ames's serious medical needs. "The personal-involvement requirement is satisfied [only] if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). Construing his allegations liberally, Ames does not allege that Tejada participated in the shakedown even though it was conducted at his direction. Nothing in the complaint suggests that Tejada knew Ames, that he'd had any contact with him prior to the shakedown, or that he otherwise might have known that he required special handling. Defendant Tejada was not responsible for Ames's purported suffering on the basis of the facts presented. Tejada's 12(b)(6) motion to dismiss is granted.

*Ames's Motion to Recruit New Counsel*

Ames's renewed motion for attorney representation is denied. As noted above, the previously-assigned judge recruited counsel for Ames following initial review. However, in March 2020, the second *pro bono* attorney assigned to this case filed a motion to withdraw. Counsel stated that he had conducted "extensive factual and legal research regarding the merits of this matter, including reviewing records provided by the Plaintiff, medical records, records from the Probate Court and numerous other Courts in which the parties in this case are involved as litigants and other publicly available records." Further, counsel noted that he had "personally consulted with Mr. Ames on two occasions regarding the factual background at issue in this litigation." Counsel advised the Court that based on his factual investigation and legal research, he had determined that "this cause lacked merit. Also, Counsel explained that he could not file an amended complaint in accordance with Fed. R. Civ. P. 11 because, in his professional assessment, Ames's claims were not warranted under existing law

11

and could not be supported by a good faith argument for extension, modification, or reversal of the existing law.

After holding two hearings on the matter, the Court granted counsel's motion for relief from appointment. Ames chose to move forward with this case, but in view of counsel's declarations, the Court declined to recruit another attorney. The Court assures Ames that it entertains no preconceived notions about the substantive merits of his claims; however, the Court concludes that it cannot, in good conscience, impose upon another attorney to take over a case that prior counsel had determined was legally and factually non-meritorious.

Ames's present motion does not alter the Court's previous decision. Once a plaintiff shows that he has attempted on his own to retain counsel, the court considers whether, "given the difficulty of the case, the plaintiff appears competent to litigate it himself." *Mejia v. Pfister*, 988 F.3d 415, 418 (7th Cir. 2021). This inquiry involves a determination as to "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* (quoting *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc)).

Ames has demonstrated not only his understanding of the factual and legal issues in this case, but also an ability to convey his positions with clarity. Although Ames's efforts to defeat Defendants' motions to dismiss did not carry the day, he responded ably to both motions. Furthermore, although Ames notes that counsel has been recruited for him in most of his cases, the fact remains that he is somewhat of a jailhouse lawyer. This case is his seventh lawsuit in this district. All of his cases survived initial review, and he has obtained settlements in at least four of those lawsuits to date. His briefs opposing dismissal in this lawsuit were replete with relevant case citations. The Court acknowledges both that Ames has work and school obligations, and that ongoing, pandemic-related restrictions may continue to limit access to legal resources for the time-being. Ames is an experienced litigator and has demonstrated his clear understanding of the legal issues in this case.

What is more, this case falls "on the straightforward end of the spectrum," *Mejia*, 988 F.3d at 418, because it involves a fairly common claim principally arising from a prison doctor's failure to issue a front-cuff medical permit. The Court is satisfied both that (1) ethical obligations would almost certainly preclude another lawyer's representation, and (2) Ames has the ability to navigate this lawsuit on his own against the single remaining Defendant. Consequently, Ames's renewed request for recruitment of counsel is denied.

*Defendant Saleh Obaisi*

Finally, a review of the docket reflects that the Estate of Saleh Obaisi waived service and entered an appearance. To date, the Estate, however, has neither answered nor responded to the complaint. The Court advises the Estate that a failure to answer or otherwise plead may result in the entry of default judgment.

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss [R. 42] and [R. 49] are granted. Non-medical-professional IDOC employees Anna McBee, Christopher Medin, Randy Pfister, Sherry Benton, Sarah Johnson, John Baldwin, and Ricardo Tejada are dismissed as Defendants to this lawsuit. The Court on its own motion dismisses Jill Hosselton as a Defendant for the same reasons provided for the dismissal of fellow grievance officer Anna McBee. Plaintiff's motion to recruit new counsel [52] is denied. The sole remaining Defendant, the Estate of Saleh Obaisi, must file its overdue answer or otherwise plead by June 7, 2021. Failure to do so may result in the entry of default against Dr. Obaisi.

**IT IS SO ORDERED.**

Date: 5/10/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge